**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN MCCARTHY,** | : | |
| | : | **Civil No. 1:14-CV-1905** |
| **Petitioner** | : | |
| | : | **(Judge Caldwell)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WARDEN, U.S. P. LEWISBURG,** | : | |
| | : | |
| **Respondent** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

John McCarthy is a criminal recidivist, a violent armed felon, a persistent violator of prison rules who often combines rules violations with threatened and actual violence, and a prodigious, if prodigiously unsuccessful, federal habeas corpus petitioner.  In this, one of his latest federal habeas corpus petitions, McCarthy brings an array of claims, both new and old, protesting his prison placement, the calculation of his federal sentence, and the outcome of a disciplinary proceeding.  None of these claims, however, merits the extraordinary remedy of federal habeas corpus relief. Accordingly, for the reasons set forth below, it is recommended that this petition for writ of habeas corpus be denied.

## II.    Statement of Facts and of the Case

### A.    John McCarthy's Background

McCarthy is currently serving a 235-month sentence imposed in the District of Connecticut for Possession of a Firearm By a Previously Convicted Felon in violation of 18 U.S.C. §§ 922(g) and 924(e).  (Doc. 9.)  McCarthy is currently scheduled for release from this federal sentence on January 23, 2017.  At the time that this federal sentence was imposed, McCarthy was also serving state sentences. Indeed, McCarthy has a lengthy criminal history marked by repeated acts of violence.  McCarthy began his criminal career at age 16 and has amassed prior convictions for burglary, larceny, drug possession, disorderly conduct, breach of peace, robbery, failure to appear, and assault of a correctional officer.  (Id., Giddings Decl.(Ex. 1 ¶ 10; Worksheet, Att. F to Ex. 1.)

While in federal custody, McCarthy has exhibited unrelenting disciplinary misconduct, misconduct that is frequently marked by violence.  McCarthy's disciplinary history includes numerous citations, including the following prison infractions:  Possession of a Dangerous Weapon; Assault (8 instances); Threatening Bodily Harm (2 instances); Being Unsanitary (7 instances); Refusing Work and/or Refusing to Obey an Order (14 instances); Insolence (10 instances); Possessing Intoxicants (3 instances); Use of Drugs (2 instances); Refusing to Take

an Alcohol Test (2 instances); Disruptive Conduct; Possessing Unauthorized

Items; Making Sexual Proposals; Possession of Drugs/Alcohol; and Interfering

With Security Devices. (Id.,  Giddings Decl. Ex. 1 ¶ 9; Worksheet Att. F to Ex. 1.)

Finally, McCarthy is a frequent, yet frequently unsuccessful petitioner in

federal court.  See McCarthy v. Warden, USP Leavenworth, 168 F. Appx. 276,

277 (10th Cir. 2006).  In fact, McCarthy has filed numerous § 2241 petitions

challenging his federal sentence in four different United States District Courts,

none of which found in his favor.  See McCarthy v. Warden, Civ. No. 2:11-cv-

2059, 2012 WL 882618 (W.D. La., Mar. 14, 2012); McCarthy v. Warden, USP

Lewisburg,448 Fed. Appx. 287 (3d Cir. 2011) (affirming the District Court in

McCarthy v. Warden, USP Lewisburg, Civ. No. 1:10-cv-1673, 2011 WL 484182

(M.D. Pa., Feb. 7, 2011); McCarthy v. Warden, Civ. No. 1:12-cv-00846, 2013 WL

3943551 (M.D. Pa., July 29, 2013); McCarthy v. Warden, USP Florence, 403

F.Appx. 319 (10th Cir. 2010).

### B.    Factual Background on McCarthy's Current Habeas Corpus Petition

It is against this backdrop that McCarthy advances an array of claims in this,

his current federal habeas corpus petition.  With respect to these various, and

disparate, claims the pertinent facts are set forth below:

### 1.      McCarthy's Conditions of Confinement Claim

At the outset, in this petition McCarthy challenges his placement into the Special Management Unit ("SMU Program") at U.S.P. Lewisburg and alleges constitutional and due process violations concerning the decision to place him into the SMU program.  (Doc. 1 at pp. 7-8.)  We note, however, that this claim is virtually identical to a claim made by McCarthy in another habeas corpus petition recently filed with this Court in McCarthy v. Ebbert, Civil No. 1:14-2091.  That petition was denied by this Court on December 2, 2014, with the Court finding that McCarthy's claims simply were not cognizable in habeas.  McCarthy v. Ebbert, No. 1:14-CV-2091, 2014 WL 6773847, at *1 (M.D. Pa. Dec. 2, 2014).

### 2.      McCarthy's Sentence Calculation Claim

In his petition, McCarthy also challenges the computation of his federal sentence, specifically alleging that "[m]y concurrent state time should be credited to my recommended concurrent federal time as presentence or precustody confinement." (Doc. 1 at p. 6.)  With respect to this claim, the evidence reveals that McCarthy is an armed career criminal who is currently serving a sentence of 235 months imprisonment for Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g) and 924(e).  That sentence was imposed upon McCarthy in 1994, at a time when McCarthy was also serving various state

sentences, and the judge's sentence was silent regarding whether this federal term of imprisonment should run concurrently with those state sentences.

On August 10, 2007, the Bureau of Prisons contacted  McCarthy's sentencing judge requesting his position as to McCarthy's request for a highly favorable concurrent retroactive designation.  (Id., Giddings Decl. Ex. 1 ¶ 4; Letter Att. B to Ex. 1.)  After receiving no response from the sentencing judge, McCarthy's request was reviewed on the merits based upon the factors set forth in 18U.S.C. § 3621(b). (Id., Giddings Decl. Ex. 1 ¶ 5; Factors under 18 U.S.C. § 3621 (b) worksheet Att. C to Ex. 1.)  These statutory factors, which prison officials must consider when determining whether an inmate is entitled to favorable consideration of a request for a concurrent and retroactive sentence, include:  (1) the resources of the facility contemplated;  (2) the nature and circumstances of the offense;  (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence.  18 U.S.C.§ 3621 (b). Thus, by mandating consideration of the inmate' offense conduct and institutional behavior, §3621 demands that prison staff examine the inmate's actions to assess whether he may present a threat to others.  Applying these factors, prison officials concluded that a retroactive designation was not appropriate, and McCarthy's request was denied.  (Id.)

5

On June 29, 2011, McCarthy's federal sentencing judge wrote a letter to the

Warden of U.S.P. Lewisburg recommending that McCarthy's sentence run

concurrent to his state sentence.  (<u>Id</u>., Giddings Decl. Ex. 1 ¶ 6; Letter Att. D to

Ex. 1.)  On July 28, 2011, the sentencing judge sent a second letter to the Warden

clarifying that his initial letter was not a court order, but merely a

recommendation.  (<u>Id</u>., Giddings Decl. Ex. 1 ¶ 7; Letter Att. E to Ex. 1.)  Based

upon this correspondence, prison officials once again reviewed McCarthy's

request for a retroactive designation on August 16, 2011.  (<u>Id</u>., Giddings Decl. Ex.

1 ¶ 8; Worksheet Att. F to Ex. 1.)  In conducting this second review, prison staff

relied upon the factors set forth in 18 U.S.C. § 362l (b) in determining whether a

retroactive designation was appropriate, and McCarthy's request was again denied.

(<u>Id</u>.)

In making its determination, prison officials were largely guided by two of

the statutory factors which they must consider, the nature and circumstances of the

offense  as well as the history and characteristics of the prisoner.  18 U.S.C.§ 3621

In this case, both of these factors weighed heavily against favorable early release

for McCarthy.  For example, McCarthy's  extensive prison disciplinary history,

which included multiple citations for prison infractions, including numerous

violent acts while in prison, cautioned against early release and strongly suggested that McCarthy continued to present a threat and danger to others.[1]

Likewise, in making this decision prison officials considered McCarthy current federal offense, a serious firearms offense committed by a criminal recidivist, and took in account the fact that McCarthy began his criminal career at age 16 and had prior convictions for burglary, larceny, drug possession, disorderly conduct, breach of peace, robbery, failure to appear, and assault of a correctional officer. (Id., Giddings Decl. Ex. 1 ¶ 10; Worksheet Att. F to Ex. 1.)  The sentencing Judge's recommendation and the fact that prior denials of retroactive designation had been expressly upheld by several courts previously were also factors that were taken into account by prison officials in making this determination.  (Id.)

### 3.    McCarthy's Challenged Disciplinary Citation

---

[1]McCarthy has been cited with the following prison misconducts: Possession of a Dangerous Weapon; Assault (8 instances); Threatening Bodily Harm (2 instances); Being Unsanitary (7 instances); Refusing Work and/or Refusing to Obey an Order (14 instances); Insolence (10 instances); Possessing Intoxicants (3 instances); Use of Drugs (2 instances); Refusing to Take an Alcohol Test (2 instances); Disruptive Conduct; Possessing Unauthorized Items; Making Sexual Proposals; Possession of Drugs/Alcohol; and Interfering With Security Devices. (Doc. 9, Giddings Decl. Ex. 1 ¶ 9; Worksheet Att. F to Ex. 1.)

Finally, in this petition McCarthy challenges one of his many prior disciplinary citation, arguing that he was denied staff assistance, witnesses and due process during a 2014 disciplinary action against him at the United States Penitentiary in Hazelton ("USP Hazelton") during which he was found guilty of possession of a weapon, a razor.  (Doc. 1 at p. 7.)  With respect to this final claim set forth in the instant petition, the pertinent fact can be simply stated:

On February 2, 2014, Senior Officer Specialist J. Brady, wrote an Incident Report against McCarthy which reported that:

> On Sunday, February 2, 2014 … I … conducted a random cell search of Z05-146.  During the search of the cell I located a slashing style weapon on the end of the upper bunk closest to the cell sink.  The weapon was a 3 ½ inch blue piece of pencil with a razor blade attached to one end with white string, and the other end was wrapped a brown band aid. Also during the search of the cell I located one brown food service tray, one torn SHU issued sheet and several feet of string torn from a SHU issued mattress.  Inmate McCarthy … and Inmate Gilmore … were both assigned to Z05-146 at the time of the search.

(Doc. 9 Incident Report Att. E to Knepper Decl. Ex. 2 at 1.)  McCarthy was then charged with the prohibited acts of possession of a weapon or any instrument used as a weapon, destroying government property with a value of less than $100.00, and possession of anything not authorized.  On February 2, 2014, McCarthy was served with written notice of the charges against him on the date of the incident,

and was  advised of his rights by Lt. J. Riffle, the investigating officer.  (Id.)

McCarthy was also provided with a copy of the Incident Report, stated that he

understood his rights, and he had no comment.  (Id.)  Based on information

provided by the reporting officer and supporting documentation, the investigative

officer referred the matter to the prison Unit Discipline Committee ("UDC.").

(Id.)

The UDC held an initial hearing on these charges on February 5, 2014.  (Id.)

McCarthy waived his appearance at the UDC hearing.  (Id.)  Given the severity of

the alleged offenses, the UDC then referred the matter to a Disciplinary Hearing

Officer (DHO) for further action.  (Id.)  McCarthy received written notice of a

hearing before the DHO and written notification of his rights at the DHO hearing

on February 5, 2014.  (Id.)

Six days later, on February 11, 2014, the DHO conducted a hearing in

McCarthy's case, and found that McCarthy committed the prohibited act of

possession of a weapon.  (Id.)  In the course of these proceedings, the DHO

confirmed that McCarthy had been advised of his rights and understood his rights.

The DHO further noted that McCarthy waived his right to a staff representative

and presented no witnesses.  (Id.)  McCarthy was also given the opportunity to

testify but told the DHO that he had no comment.  (Id.)  The DHO noted the

documentary evidence he considered, including the Incident Report and investigation, and supporting documentation and specifically observed for McCarthy that "[y]our due process rights were reviewed with you by the DHO at the time of the hearing.  You stated you understood your rights, had no documentary evidence to present, did not request any witnesses, and did not request a staff representative to assist you during the hearing.  You indicated to the DHO you were ready to proceed." (Id.)  The DHO also noted the specific evidence he relied upon to support his findings, including the written incident report which had not been disputed or contradicted in any way by other evidence.

Upon consideration of the evidence, the DHO found that McCarthy had committed the prohibited act of possession of a weapon, and sanctioned McCarthy with the loss of 40 days of good conduct time.  The DHO also carefully documented the reasons for the sanctions imposed, stating:

> The action/behavior on the part of any inmate to possess,
> manufacture, or introduce any type of weapon, or weapon making
> materials, firearm, or knife capable of inflicting serious injury to
> another person, whether another inmate or staff member, threatens the
> health, safety, and welfare of not only the inmate involved, but all
> other inmates and staff alike.  In the past, this action has been shown
> to result in more serious injuries and cannot be tolerated.  The DHO
> disallowed this inmate's Good Conduct Time.  The DHO imposed
> loss of visitation and email as punishment for committing the
> prohibited act.

(Id.)

Finally, McCarthy was advised of his right to appeal and was given a copy of the

DHO Report on March 6, 2014.  The DHO noted that distribution of the DHO

packet had been delayed, but this delay did not hinder McCarthy's ability to

appeal the DHO's decision, as he was advised that he could appeal within 20

calendar days of receiving the DHO report.  (Id.)

With respect to this particular disciplinary citation, at the time of these

events, the Bureau of Prisons also had a three-level administrative remedy process

in place that must be fully exhausted before an inmate can bring an action in

federal court.  See 28 C.F.R. § 542.10, *et seq*.  "The purpose of the Administrative

Remedy Program is to allow an inmate to seek formal review of an issue relating

to any aspect of his/her own confinement."  Id. at § 542.10(a).  "If an inmate raises

an issue in a request or appeal that cannot be resolved through the Administrative

Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-

mandated procedures."  Id. at § 542.10©.  In order to exhaust appeals under the

BOP's administrative remedy procedure, an inmate must first informally present

his complaint to staff, and staff is to attempt to resolve the matter.  Id. at §

542.13(a).  If the informal resolution is unsuccessful, then the inmate must execute

the appropriate form and bring the matter to the attention of the warden.  Id. at

11

§542.14.  The warden is then to respond to the inmate's complaint within 20 calendar days.  If the inmate is dissatisfied with the warden's response, he may then appeal to the BOP Regional Director within 20 calendar days.  Id. at § 542.15(a).  If the response of the BOP Regional Director is not satisfactory, the inmate may then appeal to the BOP Central Office within 30 calendar days, which office is the final administrative appeal in the BOP.  Id.  An exception is made for appeals of decisions of a discipline hearing officer ("DHO"), such as in the instant case, which are first raised directly to the BOP Regional Office and then to the BOP Central Office.  28 C.F.R. §542.14(d)(2).  No administrative remedy appeal is considered to have been fully exhausted until rejected by the BOP Central Office.  Id. at § 542.15(a).

In this case, with regard to this disciplinary citation, McCarthy did not file any administrative remedies challenging the disciplinary action for the 2014 possession of a weapon charge.  (Id., Knepper Decl. Ex. 2 ¶ 7; BOP SENTRY Report, Administrative Remedy Generalized Retrieval Att. B to Ex. 2)  Thus, McCarthy has never fully grieved this particular prison disciplinary decision. Instead, McCarthy elected to file the instant federal habeas corpus petition.  (Doc. 1.)

## II.    Discussion

### A.    McCarthy May Not Attack His SMU Placement in This Petition

At the outset, to the extent that the petition attacks the conditions of

McCarthy's confinement or the fact of his placement at the Lewisburg

Penitentiary, summary dismissal of this habeas petition is appropriate since the

petition fails as a matter of law because complaints about the conditions of a

prisoner's confinement simply do not sound in habeas.  The writ of habeas corpus,

one of the protections of individual liberties enshrined in our Constitution, serves

a specific, and well-defined purpose.  The writ of habeas corpus exists to allow

those in the custody of the state to challenge in court the fact, duration and

lawfulness of that custody.  As the United States Court of Appeals for the Third

Circuit has aptly noted:  "The underlying purpose of proceedings under the 'Great

Writ' of habeas corpus has traditionally been to 'inquire into the legality of the

detention, and the only judicial relief authorized was the discharge of the prisoner

or his admission to bail, and that only if his detention were found to be unlawful.'

"  Powers of Congress and the Court Regarding the Availability and Scope of

Review, 114 Harv. L.Rev. 1551, 1553 (2001)."  Leamer v. Fauver 288 F.3d 532,

540 (3d Cir. 2002).  However, there is a necessary corollary to this principle, one

which has long been recognized by the courts; namely, "[i]f a . . . prisoner is

seeking [other relief], he is attacking something other than the fact or length of his

confinement, and he is seeking something other than immediate or more speedy

release-the traditional purpose of habeas corpus.  In [such cases], habeas corpus is

not an appropriate or available federal remedy."  Preiser v. Rodriguez, 411 U.S.

475, 494 (1973).

Thus, where a prisoner wishes to constitutionally challenge some aspect of

the conditions of his confinement unrelated to the fact or duration of his detention,

courts have repeatedly held that the writ of habeas corpus is not the proper vehicle

for bringing this legal challenge.  For example, in Leamer v. Fauver, supra the

United States Court of Appeals discussed whether a habeas corpus petition was

the appropriate tool for an inmate to use when challenging a prison  placement

decision. In terms that are equally applicable here the Court of Appeals held that

these type of claims are not cognizable under habeas, stating:

> When read together, there is a logical and coherent progression of
> Supreme Court jurisprudence clarifying when [habeas and other civil
> rights relief] is unavailable:  whenever the challenge ultimately
> attacks the "core of habeas" - the validity of the continued conviction
> or the fact or length of the sentence-a challenge, however
> denominated and regardless of the relief sought, must be brought by
> way of a habeas corpus petition.  Conversely, when the challenge is to
> a condition of confinement such that a finding in plaintiff's favor
> would not alter his sentence or undo his conviction, an action under

14

[other civil rights statutes] is appropriate.

Leamer, 288 F.3d at 542 .

Following Leamer, courts have often considered invitations by inmates to use the writ of habeas corpus to examine prison placement and transfer decisions. These invitations have been consistently declined by the courts as a legal exercise which fall beyond the scope of habeas corpus jurisdiction.  See, e.g., Bedenfield v. Lewisburg, 393 F. App'x 32, 33 (3d Cir. 2010)(challenge to  placement in the SMU is analogous to the "garden variety prison transfer" that we have indicated should be challenged in a civil rights action, not via a habeas petition, citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243 (3d Cir.2005)); Dickerson v. Diguglielmo, 306 F. App'x 707 (3d Cir. 2009); Jupiter v. Warden, U.S.P. Lewisburg, 237 F. App'x 726 (3d Cir. 2007); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006); Beckley v. Miner, 125 F. App'x 385 (3d Cir. 2005).

Indeed, in Cardona v. Bledsoe, 681 F.3d 533 (3d Cir. 2012), the United States Court of Appeals for the Third Circuit directly spoke to this question regarding what must be shown to state a colorable §2241 claims in the context of a petition challenging placement at the Lewisburg Penitentiary SMU.  In terms that are equally applicable here, the court of appeals stated that:

15

In order to challenge the execution of his sentence under § 2241, [petitioner] would need to allege that BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment.  [Petitioner] has failed to do so here.  He has not alleged that BOP's conduct was inconsistent with any express command or recommendation in his sentencing judgment.  Indeed, at oral argument, [Petitioner] conceded that there was nothing in the judgment forbidding, or even concerning, his placement in the SMU. [Petitioner]'s petition simply does not concern how BOP is "carrying out" or "putting into effect" his sentence, as directed in his sentencing judgment. Consequently, [Petitioner] has not challenged the execution of his sentence, such that the District Court would have jurisdiction over his petition under § 2241.  [Petitioner] alternatively argues that his claim is a challenge to the length of his confinement, and therefore may be brought in a habeas petition.  He argues that as a consequence of his referral to the SMU, he becomes eligible to lose "good time credits" that might have resulted in a lower sentence.  We considered this argument in detail in Leamer, where a New Jersey inmate challenged his placement in a Restricted Activities Program, which consequently made him ineligible for parole.  Leamer v. Fauver, 288 F.3d 532, 536 (3d Cir.2002).  There, we held that such a claim was not properly brought in habeas because "a favorable decision of Leamer's challenge would [not] *necessarily imply* that he would serve a shorter sentence[.]"  Id. at 543.  That is, even if Leamer was removed from the Restricted Activities Program and became eligible for parole, he might not necessarily receive a shorter sentence.  The facts here are virtually indistinguishable from Leamer. Even if [Petitioner]'s placement in the SMU makes him eligible to lose good time credits, he might not end up losing any.  [Petitioner]'s claims do not concern the execution of his sentence, because the BOP's conduct is not inconsistent with his sentencing judgment. [Petitioner]'s claims also would not *necessarily* result in a change to the duration of his sentence.  Thus, "granting [Petitioner's] petition would [not] 'necessarily imply' a change to the ... duration, or execution of the petitioner's sentence."  McGee, 627 F.3d at 936.  As such, [Petitioner]'s claims were not properly brought in a habeas petition under § 2241, and the District Court correctly dismissed his

16

petition for lack of subject matter jurisdiction.

Cardona v. Bledsoe, 681 F.3d 533, 537 (3d Cir. 2012).

McCarthy is well aware of these settled tenets of federal law since his has

had an identical habeas claim dismissed on these grounds within the past 90 days.

McCarthy v. Ebbert, No. 1:14-CV-2091, 2014 WL 6773847, at *1 (M.D. Pa. Dec.

2, 2014).  These settled legal tenets, therefore, continue to control here and are

fatal to this habeas petition, to the extent that this petition simply questions

McCarthy's placement at the Lewisburg Penitentiary.  Since it is well established

that the types of complaints made here regarding the conditions of a prisoner's

confinement simply do not sound in habeas, this petition should be dismissed.

### B.     McCarthy's Sentence Calculation Claims Also Fail

McCarthy's latest effort to re-litigate his sentence calculation claims, and

the refusal of prison officials to provide him with favorable, retroactive concurrent

sentence credit, also fail for at least two reasons.

First, this effort to re-litigate this claim runs afoul of the abuse of writ

doctrine. When a prisoner has previously had a full opportunity to present a

habeas claim in one forum, the "abuse of writ doctrine" applies and provides that:

> [A] court may grant controlling weight to a denial of a prior
> application for habeas corpus when three criteria are met:  (1) the
> same ground presented in the successive application was determined

adversely to the applicant on the previous application; (2) the previous determination was made on the merits; and (3) "the ends of justice" would not be served by reaching the merits of the subsequent application. . . .  In a case in which a successive petition includes a claim for relief already fully considered and rejected, if the Government opposes the petition on an abuse of the writ basis it has the burden to plead abuse of the writ and must make the claim with clarity and particularity in its answer to the petition. . . .  But once the Government has made a claim of abuse of the writ, the burden shifts to the petitioner to show that "the ends of justice" would be served by the court entertaining his petition, a showing that the petitioner satisfies by supplementing his claim by making a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986).

Furnari v. U.S. Parole Comm'n, 531 F.3d 241, 250-51 (3d Cir. 2008) (some citations omitted).

Moreover, beyond the procedural limitations set on successive habeas petitions by statute and through the abuse of writ doctrine, it is also well-established that principles of *res judicata* apply to habeas petitions, and forbids the re-litigation of claims previously settled between the parties in prior litigation. See Anselmo v. Hardin, 253 F.2d 165 (3d Cir. 1958).

Here, McCarthy has previously, repeatedly and unsuccessfully challenged this sentence calculation.  See McCarthy v. Warden, USP Leavenworth, 168 F. Appx. 276, 277 (10th Cir. 2006).  In fact, McCarthy has filed numerous § 2241 petitions challenging his federal sentence in four different United States District Courts, none of which found in his favor.  See  McCarthy v. Warden, Civ. No.

2:11-cv-2059, 2012 WL 882618 (W.D. La., Mar. 14, 2012); <u>McCarthy v. Warden,</u>

<u>USP Lewisburg,</u>448 Fed. Appx. 287 (3d Cir. 2011) (affirming the District Court in

<u>McCarthy v. Warden, USP Lewisburg</u>, Civ. No. 1:10-cv-1673, 2011 WL 484182

(M.D. Pa., Feb. 7, 2011); <u>McCarthy v. Warden</u>, Civ. No. 1:12-cv-00846, 2013 WL

3943551 (M.D. Pa., July 29, 2013); <u>McCarthy v. Warden, USP Florence</u>, 403

F.Appx. 319 (10th Cir. 2010).

Given this showing of McCarthy's prior redundant filings, it is well-settled

that "once the Government has made a claim of abuse of the writ, the burden shifts

to the petitioner to show that 'the ends of justice' would be served by the court

entertaining his petition, a showing that the petitioner satisfies by supplementing

his claim by making a 'colorable showing of factual innocence.' " <u>Furnari v. U.S.</u>

<u>Parole Comm'n</u>, 531 F.3d 241, 250-51 (3d Cir. 2008) (some citations omitted).

McCarthy has made no such showing here, nor can he.  Therefore, this claim also

fails as matter of law under the abuse of writ doctrine.

More fundamentally, this claim also fails on its merits.  In this setting,

where we are considering the exercise of prison officials' discretion under 18

U.S.C. §3621(b), "[o]ur review is limited to whether the BOP abused its

discretion.  <u>See Barden v. Keohane</u>, 921 F.2d 476, 478 (3d Cir.1991)." <u>Vasquez v.</u>

<u>Strada</u>, 684 F.3d 431, 434 (3d Cir. 2012).  Here there plainly has been no abuse of

discretion in the decision to decline early favorable release to McCarthy, a violent

criminal recidivist.  Rather, as one appellate court noted when considering the

merits of a similar claim by McCarthy:

> when a prisoner is subject to both state and federal sentences, both
> jurisdictions have considerable discretion in determining where a
> prisoner will be confined, with the sovereign that first arrests
> generally having primary jurisdiction.  Here, Connecticut had primary
> custody over Mr. McCarthy and credited time spent-prior to the
> commencement of his federal sentence-to his state sentence.  Because
> Mr. McCarthy has received state credit for this time and the federal
> district court did not order the federal sentence to be served
> concurrently with any state sentence, he does not deserve federal
> credit for his time spent in state custody.  See 18 U.S.C. § 3585(b)
> (allowing credit for time spent in detention prior to the
> commencement of a federal sentence where that time has not been
> credited on another sentence).  Further, in light of Mr. McCarthy's
> criminal history and prior convictions, the Bureau of Prisons did not
> abuse its discretion when it declined to designate a state institution
> for the service of his federal sentence.

McCarthy v.(FNU)(LNU), Warden, 168 F. App'x 276, 277 (10th Cir. 2006).

This observation remains as true today as it was when the court of appeals

rejected this same claim by McCarthy in 2006.  Indeed, the past nine years, which

have been marked by unrelenting violent prison misconduct by the petitioner,

simply underscore the fact that the Bureau of Prisons has prudently exercised its

wide-ranging discretion in this case, and has correctly concluded that McCarthy's

own persistent misbehavior disqualified him from receiving this favorable

treatment.

### C.      The Exhaustion Doctrine  Bars Consideration of
### McCarthy's Disciplinary Citation Claim

As for McCarthy's finial complaints about his 2014 weapons possession

disciplinary citation, at the outset this aspect of McCarthy's  petition suffers from

a fundamental procedural flaw since the petitioner has failed to properly exhaust

his administrative remedies within the federal prison system.  Although 28 U.S.C.

§ 2241 contains no express exhaustion requirement, "[o]rdinarily, federal

prisoners are required to exhaust their administrative remedies prior to seeking a

writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134

F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634

(3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981).  These

exhaustion rules serve an important and salutary purpose.  The United States Court

of Appeals for the Third Circuit requires administrative exhaustion of a claim

raised under § 2241 for three reasons:  "(1) allowing the appropriate agency to

develop a factual record and apply its expertise facilitates judicial review; (2)

permitting agencies to grant the relief requested conserves judicial resources; and

(3) providing agencies the opportunity to correct their own errors fosters

administrative autonomy." <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 761-62 (3d Cir.1996); <u>see</u> <u>also</u> <u>Gambino</u>, 134 F.3d at 171; <u>Lyons v. U.S. Marshals,</u> 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that McCarthy has not fully exhausted his administrative remedies, since McCarthy neglected to fully prosecute this grievance through the three-tier grievance process prescribed by prison regulations. Thus, this case presents the very paradigm of an unexhausted petition. With respect to unexhausted habeas claims like those presented by here, it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals . . . ..' " <u>Ross v. Martinez,</u> No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously applying these exhaustion requirements, court have consistently rejected habeas petitions challenging prison disciplinary decisions where the inmate-petitioners have failed to fully exhaust their administrative remedies. <u>See, e.g.,</u> <u>Johnson v. Williamson</u>, 350 F. App'x 786 (3d Cir. 2009); <u>Pinet v. Holt</u>, 316 F. App'x 169 (3d Cir. 2009); <u>Moscato v. Federal Bureau of Prisons,</u> 98 F.3d. 757 (3d Cir. 1996).

As this Court has previously explained when dismissing  a federal

prisoner's habeas petition for failure to exhaust administrative remedies:

> In order for a federal prisoner to exhaust his administrative remedies,
> he must comply with 28 C.F.R. § 542.  See 28 C.F.R. § 542.10, et
> seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544,
> at *2 (M.D.Pa. July 26, 2007).  An inmate first must informally
> present his complaint to staff, and staff shall attempt to informally
> resolve any issue before an inmate files a request for administrative
> relief.  28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution,
> the inmate may raise his complaint with the warden of the institution
> where he is confined.  28 C.F.R. § 542.14 (a). If dissatisfied with the
> response, he may then appeal an adverse decision to the Regional
> Office and the Central Office of the BOP.  28 C.F.R. §§ 542.15(a),
> 542.18.  No administrative appeal is considered finally exhausted
> until a decision is reached on the merits by the BOP's Central Office.
> See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d
> Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, 2 (M.D.Pa. Sept. 15, 2008)

This exhaustion rule in federal habeas corpus proceedings is also subject to

a procedural default requirement.  "[A] procedural default in the administrative

process bars judicial review because 'the reasons for requiring that prisoners

challenging disciplinary actions exhaust their administrative remedies are

analogous to the reasons for requiring that they exhaust their judicial remedies

before challenging their convictions; thus, the effect of a failure to exhaust in

either context should be similar.'  Sanchez, 792 F.2d at 698.  We require

exhaustion for three reasons:  (1) allowing the appropriate agency to develop a

23

factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing  agencies the opportunity to correct their own errors fosters administrative autonomy.  Bradshaw, 682 F.2d at 1052; see also Schlesinger v. Councilman, 420 U.S. 738, 756-57, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975) (exhaustion avoids duplicative proceedings and insures that judicial review will be informed and narrowed); McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) (circumvention of administrative process diminishes effectiveness of an agency by encouraging prisoners to ignore its procedures).  Requiring petitioners to satisfy the procedural requirements of the administrative remedy process promotes each of these goals." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996)  For these reasons, "a federal prisoner who. . . , fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." Id.

This basic legal tenet applies here and is fatal to McCarthy's habeas corpus petition.  With respect to his complaints in this petition regarding this 2014 disciplinary citation McCarthy is an inmate  who has failed to exhaust his

remedies, and now fails to provide cause and prejudice which excuses this earlier

procedural default.  Therefore, McCarthy's unexhausted claims should be

dismissed.

>    **D.**     **This Petition's Attack Upon McCarthy's 2014 Weapons**
>             **Possession Disciplinary Citation Fails on Its Merits**

Furthermore, considered on its merits, this petition fails on substantive

grounds given the deferential standard of judicial review that applies to prison

disciplinary actions.  Liberally construed, in this habeas petition McCarthy

launches a two-fold constitutional assault upon this prison disciplinary decision,

challenging the disciplinary process generally on procedural due process grounds,

and asserting that the decision was substantively flawed since there was

insufficient evidence to support a finding of misconduct on his part.  Yet,

McCarthy faces an exacting burden of proof in advancing these two constitutional

claims.

>    **1.**     **Procedural Standards for DHO Hearings**

First, with respect to his procedural due process concerns, it is well

established that "[p]rison disciplinary proceedings are not part of a criminal

prosecution, and the full panoply of rights due a defendant in such proceedings

does not apply."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  The Supreme

Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the

26

hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.5 After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.7. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.7. The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28

C.F.R. §541.8.  The hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.8.

Throughout this hearing process the inmate is provided with a series of procedural rights.  For example, the inmate is entitled to notice of the alleged infraction.  Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.8. The inmate is also entitled to assistance at DHO hearings.  In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.8.

The inmate also has a series of procedural rights at the hearing itself.  Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence.  The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.8, the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available.  The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized.  28 C.F.R. §541.8.

In addition, the regulations prescribe procedural standards for DHO decision-making.  Thus, the regulations require that the DHO must consider all evidence presented at the hearing.  The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence.  28 C.F.R. §541.8.  Finally, the DHO must prepare a record of the proceedings.  This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO.  The record must include a brief statement of the reasons for the sanction imposed.  A copy of this record must also be delivered to the inmate.  28 C.F.R. §541.8.

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting.  See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

2.      **Substantive Standards Governing DHO Decisions**

In his habeas petition, McCarthy also attacks the substance of this particular

DHO decision, arguing that there was insufficient evidence to support any finding

of misconduct on his part.  Like his procedural due process challenge, this

substantive attack on the sufficiency of the evidence in this disciplinary hearing

must meet a demanding legal standard to succeed.  A prison disciplinary

determination comports with due process if it is based on "some evidence."  See

Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he

relevant question is whether there is any evidence in the record that could support

the conclusion reached by the disciplinary board").  This standard is minimal and

does not require examination of the entire record, an independent assessment of

the credibility of witnesses, or even a weighing of the evidence.  See id. at 455;

Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989).  Accordingly, in order

to pass constitutional muster a "disciplinary decision must [simply] be supported

by 'some evidence,' that is, 'any evidence in the record that could support the

conclusion reached by the disciplinary board.' " Campbell v. Holt, 432 F. App'x

49, 51 (3d Cir. 2011).  Therefore, it is well settled that the decision of the DHO is

entitled to considerable deference by a reviewing court and must be upheld

whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457;

Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456. McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011) (The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011)("we need not examine the entire record, re-weigh the evidence, or independently assess witness credibility in assessing whether the 'some evidence' standard is met.") Applying this deferential standard, once the

31

reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof . See e.g., McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011); Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Judged against these standards, McCarthy's procedural and substantive challenges to this prison disciplinary proceeding which resulted in the loss of good time for this inmate simply fails. First, with respect to any procedural due process claims, in this case it is evident that this prisoner's due process rights were fully vindicated. McCarthy received advance, written notice of the proposed disciplinary charges against him. Moreover, he was notified on multiple occasions

of his procedural due process rights, including his right to have staff assistance and to request witnesses.  In this case, McCarthy either exercised those rights, or expressly waived the rights he had in connection with these disciplinary hearings. Furthermore, once the hearing was concluded prison officials scrupulously complied with prison regulations, and afforded McCarthy his due process rights, by providing him with a written decision outlining the basis of their actions, and describing his appellate rights.

As for any complaints regarding the procedural fairness of the DHO proceeding, the petitioner offers little to support this claim beyond  a "generalized critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation.  Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009).  Thus, the record of this disciplinary proceeding affirmatively reveals that McCarthy was given all of the procedural protections that due process requires in this setting since he was afforded:  (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  Wolff v. McDonnell, 418 U.S. at 563-67.  Given the full array of procedural rights provided to McCarthy during this proceeding, any procedural due process claims

33

simply fail. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding

disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir.

2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same);

Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.

Supp. 2d 144 (M.D.Pa. 2003)(same).

     Nor can McCarthy successfully challenge the substantive outcome of the

DHO hearing, since it is apparent that this decision was adequately supported by

"some evidence" in the record.  Indeed, with respect to this issue, the DHO

decisions entailed the most basic of fact-finding determinations: weighing

inculpatory evidence, including the discovery of a weapon in a cell shared by

McCarthy and one other inmate.  In such a setting, it is well-settled that "the 'some

evidence' standard may be satisfied by application of the constructive possession

doctrine in limited circumstances where a small number of inmates are potentially

guilty of the offense charged.  See White v. Kane, 860 F.Supp. 1075, 1079 n. 5

(E.D.Pa.1994), aff'd, 52 F.3d 319 (3d Cir.1995)."  Reynolds v. Williamson, 197 F.

App'x 196, 199 (3d Cir. 2006).

     Since the "some evidence" standard of "does not require examination of the

entire record, independent assessment of the credibility of witnesses, or weighing

of the evidence," but only entails a determination "whether there is any evidence

in the record that could support the conclusion reached by the disciplinary board," <u>Stanko v. Obama</u>, 434 F. App'x 63, 66 (3d Cir. 2011), this reasonable, rational finding by the DHO is fatal to McCarthy's claims in this petition.  Accordingly, on these facts, we conclude that there was also some evidence to support this disciplinary finding.  Since there is an adequate factual basis for that disciplinary finding, McCarthy's substantive challenge to these disciplinary actions should also be rejected.  <u>See, e.g.</u>, <u>Fiore v. Lindsay</u>, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); <u>Macia v. Williamson</u>, 219 F. App'x 229 (3d Cir. 2007)(same); <u>Reynolds v. Williamson</u>, 197 F. App'x 196 (3d Cir. 2006)(same); <u>Levi v. Holt</u>, 193 F. App'x 172 (3d Cir. 2006)(same); <u>Sinde v. Gerlinski</u>, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Petition be DENIED and that a certificate of appealability should not issue.  The petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the

portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may  accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of February, 2015.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge